*1048 D.W. NELSON, Senior Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s opinion in large part. My central disagreement concerns the claim that defense counsel failed to call Dr. Blinder during the penalty hearing to testify about Gulbrandson’s state of mind at the time of the crime. I would hold that the Arizona Supreme Court unreasonably determined the facts in denying this claim and would remand for an evidentiary hearing on that basis. Therefore, I respectfully dissent.
My colleagues deny Gulbrandson’s claim on the merits by concluding that Gulbrand-son was not prejudiced by counsel’s decision not to recall Dr. Blinder at sentencing because the evidence, if presented, would have been cumulative. Majority at 1039-40. I cannot agree. We cannot determine whether Dr. Blinder’s 1997 declaration is cumulative of the mental health evidence presented during the guilt phase of trial, but it does not appear so.[1] And a review of the record before the post-conviction court raises many questions about why counsel did not call Dr. Blinder during the sentencing hearing, making suspect the post-conviction court’s resolution of this claim without any evidentiary development.
The post-conviction court had the following information before it when it denied Gulbrandson’s petition: (1) Dr. Blinder’s 1992 pre-trial report, which did not mention the issue of M’Naghten insanity; (2) defense counsel’s pre-trial statements to the trial court that Dr. Blinder would testify that the petitioner was M’Naghten insane; (3) Dr. Blinder’s guilt phase testimony, during which counsel did not ask about, nor did Dr. Blinder testify to, M’Naghten insanity; (4) trial counsel’s 1997 declaration that Dr. Blinder stated repeatedly before trial that he was unwilling to opine that the petitioner was M’Naghten insane at the time of the crime; and (5) Dr. Blinder’s 1997 declaration stating that he was willing, both at the time of trial and in 1997, to testify that the petitioner’s mental illness significantly affected his ability to appreciate the nature and quality of his acts or to distinguish right from wrong, and that the petitioner was unable to conform his conduct to societal norms.
The post-conviction court denied Gul-brandson’s ineffective assistance of counsel claim concerning counsel’s failure to call Dr. Blinder at sentencing without an evi-dentiary hearing. The court reasoned that the mental health evidence presented during the guilt phase — that Gulbrandson had possibly experienced a dissociative/fugue state and suffered from bipolar disorder, alcoholism and a personality disorder— was before the trial court during the sentencing phase and did not need to be pre *1049 sented again. The state court also concluded that defense counsel believed at the time of trial that Dr. Blinder was unwilling to offer any testimony other than what he had put in his pre-trial report or testified to at trial, and thus that counsel’s failure to elicit additional evidence at sentencing about petitioner’s mental state was not ineffective assistance. The post-conviction court also held that there had been no prejudice.
The state court did not deny this ineffective assistance of sentencing counsel claim in a vacuum, however. The court also denied Gulbrandson’s guilt-phase claim that trial counsel failed to elicit testimony that would have supported an insanity defense. In so doing, the court made a factual determination relevant to Gulbrandson’s sentencing claim: The court concluded that even if Dr. Blinder had been willing to testify in 1997 that petitioner may have been M’Naghten insane at the time of the crime, he was not willing to offer that testimony at the time of trial. In reaching this conclusion, the state court relied on Dr. Blinder’s 1992 pretrial report, which did not mention M’Naghten insanity.
But the post-conviction court also had before it Dr. Blinder’s 1997 declaration, in which the doctor stated that he was willing to testify in 1997 and at the time of trial that Gulbrandson was “suffering from ... mental illnesses ... that would significantly affect his ability to appreciate the nature and quality of his acts or to understand right from wrong,” and that he “was unable to conform his conduct to societal norms because of his mental disability.” This testimony may have been insufficient to establish the version of M’Naghten insanity in effect in Arizona at the time of trial.[2] But the opinion expressed in Dr. Blinder’s 1997 affidavit comes awfully close to the M’Naghten insanity standard, and surely would have been probative evidence at sentencing. See Ariz.Rev.Stat. § 13-703 (1991) (listing as a statutory mitigating factor “[t]he defendant’s capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution”). Yet the post-conviction court inexplicably failed to mention it. That is, the state court resolved the claim by relying on the absence of a reference to M’Naghten insanity in Dr. Blinder’s 1992 pre-trial report, while completely ignoring Dr. Blinder’s 1997 affidavit, which both averred that Gulbrandson suffered a mental impairment very similar to M’Naghten insanity and stated explicitly that Dr. Blinder was willing to offer that opinion at the time of trial. I find this conclusion not just unreasonable but utterly baffling.
My reading of the record convinces me that the post-conviction court implicitly adopted trial counsel’s assertion that Dr. Blinder was unwilling to offer the testimony in his 1997 declaration at the time of trial. That finding, of course, is flatly belied by Dr. Blinder’s 1997 affidavit. Hence, in denying Gulbrandson’s claim of’ ineffective assistance of sentencing counsel, the state court must have done one of two things: either it (1) ignored parts of Dr. Blinder’s 1997 affidavit entirely or (2) determined, without an evidentiary hearing, that trial counsel’s 1997 declaration was more credible than Dr. Blinder’s con *1050 flicting 1997 declaration. In either case, the court’s finding was objectively unreasonable. It was unreasonable if the post-conviction court ignored Dr. Blinder’s 1997 declaration, and it was equally unreasonable if the Court implicitly made an adverse credibility determination or resolved the factual dispute in the warden’s favor without any evidentiary development.
The state court’s decision is particularly problematic because there is reason to doubt Gulbrandson’s trial counsel’s version of the facts. The post-conviction court did not mention, and perhaps did not notice, that trial counsel’s statements are internally contradictory. Before trial, counsel informed the trial court that the defenses were insanity and absence of intent, that Dr. Blinder examined Gulbrandson “to determine if, in fact, he was M’Naghten insane at the time of the event,” and that trial counsel “would expect” Dr. Blinder’s testimony to relate to M’Naghten insanity. That statement to the trial judge in 1992 contradicts counsel’s 1997 declaration that Dr. Blinder repeatedly informed trial counsel that he was unwilling to render an opinion that Gulbrandson was M’Naghten insane at the time of the murder. This glaring inconsistency calls counsel’s credibility into question, and the post-conviction court’s failure even to address the inconsistency is further evidence that it erred.
However it arrived at its conclusion that Dr. Blinder had nothing useful to add to the sentencing phase, the post-conviction court unreasonably determined the facts. Even though “we must be particularly deferential to our state-court colleagues,” I remain “convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.” Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir.2004). In my view, “any appellate court to whom [these defects were] pointed out would be unreasonable in holding that the state court’s fact-finding process was adequate.” Id. The state court “overlooked or ignored evidence” that was “highly probative and central to petitioner’s claim,” which “fatally undermine[d] the state fact-finding process, render[ing] the resulting finding[s] unreasonable.” Id. at 1001.
Because I believe that the state court made an unreasonable determination of the facts, I also believe that its decision is not entitled to deference and that this claim presents a rare instance in which Gulbrandson is entitled to submit new evidence in federal court. See Cullen v. Pinholster, — U.S. -, 131 S.Ct. 1388, 1401, 179 L.Ed.2d 557 (2011). Rather than resolve this claim on the merits, as the majority does, I would remand for an evidentiary hearing.
For these reasons, I respectfully dissent.

. The majority excerpts portions of Dr. Blinder’s trial testimony to show that the opinions offered in his 1997 declaration were "essentially the same as the testimony adduced at trial." Majority at 1039-40. This post-hoc analysis troubles me for two reasons. First, even with Dr. Blinder’s 1997 affidavit before us, we cannot know whether the testimony he would actually have offered during the sentencing phase would have been cumulative of his trial testimony. Second, as a court of appeal, we are poorly situated to determine whether Dr. Blinder's 1997 affidavit is cumulative of his 1992 testimony — particularly without the benefit of expert opinions. The majority finds the "cumulative nature of the 1997 affidavit” to be "readily apparent”; I think it quite otherwise. Majority at 1039. But in any case, determining the salience of the distinctions between the opinions Dr. Blinder expressed in his 1992 testimony and report and those he would have expressed if he had been recalled at sentencing is the province of mental health experts, which highlights the core of my objection: that the state court denied this claim without holding an evidentiary hearing or making the factual determinations necessary to resolve it.

. Arizona law required a defendant asserting a M’Naghten insanity defense to prove that he was actually unable to understand the quality of his acts, not just significantly impaired in his ability to do so. See Ariz.Rev.Stat. § 13-502 (1991) (stating that M’Naghten insanity requires a showing that a person who was suffering from a mental disease or defect did "not know the nature and quality of the act, or if such person did know, that such person did not know that what he was doing was wrong”).